XAVIER BECERRA
Attorney General of California
ANNE MICHELLE BURR
Supervising Deputy Attorney General
CARA M. PORTER
Deputy Attorney General
State Bar No. 266045
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 510-3508
  Fax: (415) 703-5480
  E-mail: Cara.Porter@doj.ca.gov
*Attorneys for Defendant
California Franchise Tax Board*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE:<br><br>DAVID GREGORY MCCLURE,<br><br>                             Debtor.<br><br>DAVID GREGORY MCCLURE,<br><br>                             Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA FRANCHISE TAX BOARD,<br><br>                             Defendant. | CASE NO. 12-52306 MEH-13<br><br>Chapter 13<br><br>Adversary No. 17-05083<br><br>**DEFENDANT CALIFORNIA FRANCHISE TAX BOARD'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing:   July 9, 2018<br>Time:      11:00 a.m.<br>Place:     3035<br>Judge     The Honorable M. Elaine Hammond |

**TABLE OF CONTENTS**

Page

Introduction ................................................................................................................................ 1
Factual Background .................................................................................................................... 2
    I.       The Chapter 13 Bankruptcy Filing ............................................................................ 2
    II.      This Adversary Proceeding ....................................................................................... 4
Argument .................................................................................................................................... 4
    I.       Standards for Summary Judgment ............................................................................ 4
    II.      The Subject Tax Liabilities Fall Squarely within the Exception to Discharge Provided by § 523(a)(1)(B)(ii). ............................................................... 5
          A.     Debtor Failed to File Timely Tax Returns for the 2003 through 2007 Tax Years as Required by California Law. ........................................ 5
          B.     The Tax Returns Were Filed After Two Years Before the Petition Date. ........................................................................................................... 6
          C.     The Plain Meaning of § 523(a)(1)(B) Requires a Finding that the Tax Debt is not Discharged. ............................................................................ 6
    III.     The Order of Discharge Entered in the Main Bankruptcy Case Specifically Excepted Debts Described in § 523(a)(1)(B) from Discharge. ............................... 7
    IV.     The Plain Language of the Plan Did Not Discharge the Subject Liabilities. ........... 8
    V.      Under In re Bisch, FTB Did Not Have A Duty to Object to Confirmation of the Plan. .................................................................................................................... 9
Conclusion ................................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986).................................................................................................5

*Bisch v. United States of America* (*In re Bisch*)
   159 B.R. 546 (9th Cir. B.A.P. 1993)................................................................2, 9, 10

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986).................................................................................................4

*County of Ventura Tax Collector v. Brawders* (*In re Brawders*)
   325 B.R. 405 (9th Cir. B.A.P. 2005).........................................................................9

*Enewally v. Washington Mutual Bank* (*In re Enewally*)
   368 F.3d 1165 (9th Cir. 2004)...................................................................................8

*Espinosa v. United Student Aid Funds, Inc.*
   553 F.3d 1193 (9th Cir. 2008)..........................................................................1, 7, 8

*Mansker v. TMG Life Ins. Co.*
   54 F.3d 1322 (8th Cir. 1995).....................................................................................5

*Metro One Telecommunications, Inc. v. C.I.R.*
   704 F.3d 1057 (9th Cir. 2012)...................................................................................6

*Miller v. United States*
   363 F.3d 999 (9th Cir. 2004).....................................................................................9

*Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*
   57 F.3d 1317 (4th Cir. 1995).....................................................................................5

*United States v. Ron Pair Enterprises, Inc.*
   489 U.S. 235 (1989).................................................................................................6

*United Student Aid Funds, Inc. v. Espinosa*
   559 U.S. 260 (2010).................................................................................................7

**TABLE OF AUTHORITIES**
(continued)

**Page**

**STATUTES**

United States Code, Title 11
  § 523(a)(1)(B) ............................................................................................................. *passim*
  § 523(a)(1)(B)(ii) ........................................................................................................ *passim*
  § 1325(a) ............................................................................................................................ 7
  § 1325(a)(1) ........................................................................................................................ 7
  § 1328(a) ..................................................................................................................... *passim*
  § 1328(a)(2) ............................................................................................................... 2, 4, 8

**COURT RULES**

Federal Rule of Bankruptcy Procedure Rule
  4007 ................................................................................................................................... 4
  7001(6) .............................................................................................................................. 4
  7026 ................................................................................................................................... 4
  7056 ................................................................................................................................... 4
  9014(c) ............................................................................................................................... 4

Federal Rule of Civil Procedure Rule
  26(d)(1) .............................................................................................................................. 4
  56(a) ................................................................................................................................... 4

# INTRODUCTION

By this action, plaintiff David Gregory McClure ("debtor") claims the California income tax liability that he owes defendant California Franchise Tax Board ("FTB") for the 2003 through 2007 tax years (the "subject liabilities") has been discharged by the Order of Discharge issued in the main bankruptcy case (Case No. 12-52306) on January 11, 2017.[1] However, the Bankruptcy Code provides that a Chapter 13 discharge under 11 U.S.C. § 1328(a) does not discharge tax debts under 11 U.S.C. § 523(a)(1)(B) related to unfiled or late-filed tax returns, if the returns were filed after two years before the petition date. 11 U.S.C. §§ 1328(a), 523(a)(1)(B)(ii).[2] The subject liabilities were not discharged in the underlying bankruptcy case for the following four reasons.

First, it is undisputed that the subject liabilities fall squarely within the exception to discharge provided by the plain language of § 523(a)(1)(B)(ii). As set forth in the Joint Stipulation of Facts in Support of Cross-Motions for Summary Judgment, it is undisputed that debtor was required to file his state tax returns related to the 2003 through 2007 tax years, that debtor filed those returns after the date on which they were last due, and that debtor filed those returns after two years before the petition date.

Second, it is undisputed that the Order of Discharge specifically did not discharge debts described in § 523(a)(1)(B). Because the subject liabilities meet the requirements in § 523(a)(1)(B), the Order of Discharge did not discharge them. Additionally, the Order of Discharge is consistent with the Order Confirming Plan, as required by Ninth Circuit precedent, and should accordingly be enforced.

---

[1] Despite plaintiff's position as alleged in the Complaint, this case is not a question of *res judicata* – giving the judgment in the bankruptcy case preclusive effect in another case. Here, Plaintiff does not seek to enforce or interpret a Plan provision, because there was no provision in the Plan purporting to discharge the liability owed to FTB. Instead, debtor seeks to determine the dischargeability of FTB's debt, and (if discharged) enforce the discharge injunction to prevent FTB from collecting the debt. "A discharge injunction does not operate by way of *res judicata*; it is, rather, an equitable remedy precluding the creditor, on pain of contempt, from taking any actions to enforce the discharged debt." *Espinosa v. United Student Aid Funds, Inc.* 553 F.3d 1193, 1200 (9th Cir. 2008), *aff'd*, 559 U.S. 260 (2010).

[2] Unless otherwise stated, all further statutory references shall be to Title 11 of the United States Code.

Third, it is undisputed that the confirmed Chapter 13 Plan (the "Plan") did not contain a provision that expressly or impliedly stated that the subject liabilities were discharged despite the exception to discharge included in § 1328(a)(2).

Fourth, Ninth Circuit Bankruptcy Appellate Panel ("BAP") case law supports FTB's position. Analogous to the court's decision in *Bisch v. United States of America* (*In re Bisch*), 159 B.R. 546 (9th Cir. B.A.P. 1993) ("*Bisch*"), a debt described in § 523(a)(1)(B) – such as the subject liabilities – passes through bankruptcy unaffected by a discharge under § 1328(a). Under that holding, FTB did not have an obligation to object to confirmation of the Plan, which did not propose to discharge the subject liabilities.

Accordingly, FTB asserts that the tax and interest owed related to the 2003 through 2007 tax years were not discharged under §§ 1328(a)(2) and 523(a)(1)(B)(ii), or the Order of Discharge.

Because there is no triable issue of material fact related to the nondischargeability of the subject liabilities, FTB is entitled to judgment as a matter of law that the subject liabilities were not discharged by the discharge issued in this case. FTB respectfully requests that the Court grant the motion and enter judgment declaring that the subject liabilities, and all post-petition interest thereon, were excepted from the discharge entered in this case.

## FACTUAL BACKGROUND

### I. THE CHAPTER 13 BANKRUPTCY FILING

On March 26, 2012, debtor commenced the related bankruptcy case, when he filed for relief under Chapter 13 of Title 11 of the United States Code, case number 12-52306. (Joint Stipulation of Facts in Support of Cross-Motions for Summary Judgment, Docket No. 7 ("Stipulated Facts"), ¶ 1.)

On February 13, 2013, FTB filed its claim in this matter, Claim 6-2, in the amount of $27,686.47 and as an unsecured claim. (Stipulated Facts, ¶ 2; Joint Exhibit A.) FTB did not file a secured claim, nor a priority claim. (Stipulated Facts, ¶ 6.)

The basis of FTB's Claim 6-2 is debtor's debt for taxes owed to FTB related to the 2003 through 2007 tax years. (Stipulated Facts, ¶ 4.) Debtor was required to file a return with FTB

with respect to these taxes by the Deadline to File Tax Return (i.e., the date the return was last due, under applicable law or under any extension), but debtor filed a return with FTB with respect to these taxes late on the Date Return Actually Filed, as set forth in Table 1, below:

**Table 1**

| Tax Year | Deadline to File Tax Return | Date Tax Return Actually Filed |
|---|---|---|
| 2003 | April 15, 2004 | May 15, 2011 |
| 2004 | April 15, 2005 | May 15, 2011 |
| 2005 | April 17, 2006 | May 15, 2011 |
| 2006 | April 17, 2007 | May 15, 2011 |
| 2007 | April 15, 2008 | October 27, 2010 |

(Stipulated Facts, ¶ 4.)

Claim 6-2 stated that debtor owed FTB the following amounts for the corresponding tax years as set forth in Table 2, below:

**Table 2**

| Tax Year | Tax | Penalty | Interest | Costs | Total Claim |
|---|---|---|---|---|---|
| 2003 | $0.00 | $0.00 | $2,420.60 | $90.00 | $2,510.61 |
| 2004 | $2,392.00 | $2,091.06 | $1,991.10 | $120.00 | $6,594.16 |
| 2005 | $2,934.00 | $2,220.02 | $1,916.12 | $125.00 | $7,195.14 |
| 2006 | $2,619.00 | $2,344.05 | $1,258,12 | $119.00 | $6,340.17 |
| 2007 | $1,896.82 | $2,295.50 | $722.07 | $132.00 | $5,046.39 |

TOTAL: $27,686.47

(Stipulated Facts, ¶ 5.)

On September 13, 2013, debtor filed the Plan. (Stipulated Facts, ¶ 7; Joint Exhibit C.) The Plan provided for treatment to FTB as a secured creditor in section 2(b) of the Plan, but failed to specifically address FTB's unsecured claim. (Joint Exhibit C.) The treatment described in section 2(b) of the Plan is inapplicable to FTB's unsecured claim. (*Id.*) The Plan did not contain

any other reference specifically to FTB by name, to FTB's claim by number or description, or to the liability owed to FTB in any way. (*Id.*) Finally, the Plan did not contain a provision that expressly or impliedly stated that the subject liabilities were discharged despite the exception to discharge included in § 1328(a)(2). (*Id.*)

On October 23, 2013, the Court confirmed the Plan. (Stipulated Facts, ¶ 9; Joint Exhibit D.) On January 11, 2017, debtor received his Chapter 13 discharge under § 1328(a). (Stipulated Facts, ¶ 11; Joint Exhibit E.) Neither the Plan, the Order Confirming Plan, the Order of Discharge, nor any other source gave notice of any intention by debtor to discharge the nondischargeable debt owed to FTB. (Joint Exhibits C, D, E.) In fact, the Order of Discharge specifically stated, "Some debts are not discharged. Examples of debts that are not discharged are: . . . debts for certain types of taxes specified in . . . § 523(a)(1)(B) . . . to the extent not paid in full under the plan." (Joint Exhibit E.)

## II. THIS ADVERSARY PROCEEDING

On October 17, 2017, debtor initiated this proceeding to determine the dischargeability of the subject liabilities pursuant to § 523(a)(1)(B)(ii) and Rules 4007 and 7001(6) of the Federal Rules of Bankruptcy Procedure. (Complaint to Determine Dischargeability, Docket No. 1.) On November 8, 2017, FTB filed its Answer to Complaint. (Answer to Complaint, Docket No. 4.) The parties agreed to defer initial disclosures and stay discovery pursuant to Rule 26(d)(1) of the Federal Rules of Civil Procedure, applicable here pursuant to Rule 7026 of the Federal Rules of Bankruptcy Procedure, opting instead to prepare the Stipulated Facts in preparation for filing the instant cross-motions for summary judgment.

## ARGUMENT

### I. STANDARDS FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, made applicable under Rules 7056 and 9014(c) of the Federal Rules of Bankruptcy Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion . . . ." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party meets its burden, the opposing party "may not rest upon the mere allegation or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is "material" if, under the governing law, it "might affect the outcome of the suit." *Id.* at 248. A dispute about a material fact is "genuine" only if "the evidence is such that a reasonably [trier of fact] could return a verdict for the nonmoving party." *Id.*

"[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden," which provides the appropriate "standards and boundaries" under which the trier of fact would assess the evidence if the matter went to trial. *Id.* at 254-55. Summary judgment is appropriate for cases in which the unresolved issues are primarily legal rather than factual. *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995); see *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995) (explaining that the district court "may resolve the legal questions between the parties as a matter of law and enter judgment accordingly").

## II. THE SUBJECT TAX LIABILITIES FALL SQUARELY WITHIN THE EXCEPTION TO DISCHARGE PROVIDED BY § 523(a)(1)(B)(ii).

Section 523(a)(1)(B)(ii) provides,

> A discharge under section . . . 1328(b) of this title does not discharge an individual debtor from any debt for a tax . . . with respect to which a return, or equivalent report or notice, if required, was filed or given after the date on which such return, report or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition."

§ 523(a)(1)(B)(ii). As set forth below, the subject liabilities meet each of these elements.

### A. Debtor Failed to File Timely Tax Returns for the 2003 through 2007 Tax Years as Required by California Law.

The deadlines for debtor to file with FTB returns for the 2003, 2004, 2005, 2006 and 2007 tax years were April 15, 2004, April 15, 2005, April 17, 2006, April 17, 2007, and April 15, 2008, respectively. (Stipulated Facts, ¶ 4.)

5

FTB'S MPA IN SUPPORT OF MSJ (AP Case No. 17-5083)

Case: 17-05083   Doc# 13-1   Filed: 05/21/18   Entered: 05/21/18 13:06:22   Page 9 of 14

However, debtor failed to meet the filing deadlines for those tax years. Instead, he filed the returns *after* the respective deadlines, on October 27, 2010 for the 2007 tax year, and on May 15, 2011 for the remaining subject tax years. (Stipulated Facts, ¶ 4.) Thus, the tax returns for the subject liabilities were filed after the date on which they were last due under § 523(a)(1)(B)(ii).

**B.     The Tax Returns Were Filed After Two Years Before the Petition Date.**

Two years before the petition date was March 26, 2010. Accordingly, § 523(a)(1)(B)(ii) applies if the tax returns were filed after March 26, 2010. In fact, all of the returns related to the 2003 through 2007 tax years were filed after that date, on either October 27, 2010 or May 15, 2011. Thus, debtor filed the tax returns after two years before the petition date within the meaning of § 523(a)(1)(B)(ii).

**C.     The Plain Meaning of § 523(a)(1)(B) Requires a Finding that the Tax Debt is not Discharged.**

In interpreting a statute, "we must start with the language of the statute." *Metro One Telecommunications, Inc. v. C.I.R.*, 704 F.3d 1057, 1061 (9th Cir. 2012). "In the absence of an indication to the contrary, words in a statute are assumed to bear their ordinary, contemporary, common meaning." *Id.* "The plain meaning of the legislation should be conclusive, except in the 'rare case [in which] the literal application of the statute will produce a result demonstrably at odds with the intention of the drafters.'" *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989).

Based on the plain meaning of § 523(a)(1)(B), if the tax returns were filed late and after two years before the petition date, the resulting tax debt is not discharged. Nothing in the statute suggests this result is not the case. Moreover, neither debtor nor anyone else suggests that this interpretation would produce a result demonstrably at odds with the intention of the drafters.

Therefore, the subject liabilities meet the elements of § 523(a)(1)(B)(ii), and are excepted from discharge pursuant to the plain language of the Bankruptcy Code.

**III. THE ORDER OF DISCHARGE ENTERED IN THE MAIN BANKRUPTCY CASE SPECIFICALLY EXCEPTED DEBTS DESCRIBED IN § 523(a)(1)(B) FROM DISCHARGE.**

In addition to being excepted from discharge under the plain language of the Bankruptcy Code, the subject liabilities were excepted from discharge pursuant to the Order of Discharge entered in this case. That Order specifically stated, "Some debts are not discharged. Examples of debts that are not discharged are: . . . debts for certain types of taxes specified in . . . § 523(a)(1)(B) . . . to the extent not paid in full under the plan." (Joint Exhibit E, p. 1.) Here, the subject liabilities were taxes specified in § 523(a)(1)(B) (see above), and they were not paid in full under the Plan, because the Plan failed to provide for payment of any portion of FTB's unsecured claim. (Joint Exhibit C.) Thus, the Order of Discharge, on its face, did not discharge the subject liabilities.

Additionally, treatment of the tax debts in the Order of Discharge is consistent with the Confirmation Order and the Plan. A discharge order should be compatible with a confirmation order. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 268, n. 4 (2010) ("*Espinosa*"). In *Espinosa*, "[t]he one-page discharge order . . . purported to exclude any debt for a student loan from the discharge," whereas the confirmation order "contemplated the discharge of the interest on Espinosa's student loan debt." *Id*. In proceedings before the lower courts, the Ninth Circuit remanded the case to the Bankruptcy Court to consider amending the discharge order to conform to the confirmation order, which the Bankruptcy Court did. *Id*.

Here, the Order of Discharge is consistent with the Plan and the Order Confirming Plan in that none of these documents discharged the subject liabilities.

First, the Plan did not specifically propose to discharge the tax debts, and the Plan did not include any provision contrary to § 1328(a), which excepts the debts described in § 523(a)(1)(B) from discharge. (Joint Exhibit C.)

Second, the Order Confirming Plan stated that the Plan "complies with 11 U.S.C. § 1325(a), and other applicable bankruptcy laws, rules and procedures." (Joint Exhibit D, ¶ 1.) Section 1325(a)(1) provides that the Plan must comply with "the provisions of [Chapter 13]," which includes § 1328(a). Section 1328(a) excepts the debts described in § 523(a)(1)(B) from

7

discharge. As explained above, the subject liabilities are the type of debts described in § 523(a)(1)(B). Therefore, the confirmation order did not discharge the subject liabilities.

Third, as explained above, the Order of Discharge specifically excepted the tax debts from discharge. (Joint Exhibit E, p. 1.)

Because treatment of the subject liabilities in the Order of Discharge is consistent with the Plan and the Order Confirming Plan, the Order of Discharge should be enforced. Because the Order of Discharge specifically excepted debts described in § 523(a)(1)(B), and the subject liabilities meet the elements of § 523(a)(1)(B), the subject liabilities are excepted from discharge pursuant to the Order of Discharge entered in this case.

## IV. THE PLAIN LANGUAGE OF THE PLAN DID NOT DISCHARGE THE SUBJECT LIABILITIES.

The Plan contains no language that expressly or impliedly stated the subject liabilities were discharged despite the exception to discharge under § 1328(a)(2). The only reference to FTB in the Plan is section 2(b), wherein debtor proposed to pay $0 on FTB's non-existent secured claim. (Joint Exhibit C, ¶ 2(b).) Remarkably, it is undisputed that the Plan did not contain any other reference specifically to FTB by name, to FTB's claim by number or description, or to the liability owed to FTB in any way.

Surely, discharging a non-dischargeable debt is the type of procedure for which the Bankruptcy Code and Rules require a heightened degree of notice, as described in *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d at 1204 (quoting *In re Banks*, 299 F.3d 296, 303 n. 4 (4th Cir. 2002)). If a debtor seeks to discharge a creditor's nondischargeable debt through the plan, due process entitles the creditor to receive such notice before an order binding the party will be afforded preclusive effect. *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d at 1204.

Moreover, any provision purporting to discharge a non-dischargeable debt must be clear. A "confirmed plan has no preclusive effect on issues that . . . [are] not sufficiently evidenced in a plan to provide adequate notice to the creditor." *Enewally v. Washington Mutual Bank* (*In re Enewally*), 368 F.3d 1165, 1173 (9th Cir. 2004). Any ambiguity in a plan is interpreted against the debtor, and any ambiguity may also reflect that the court that originally confirmed the plan

did not make any final determination of the matter at issue. *County of Ventura Tax Collector v. Brawders* (*In re Brawders*), 325 B.R. 405, 411 (9th Cir. B.A.P. 2005), *aff'd* 503 F.3d 856 (9th Cir. 2007), (adopting as its own the BAP's "thorough and well-reasoned opinion."); *Miller v. United States*, 363 F.3d 999, 1006 (9th Cir. 2004).

Here, there was no Plan provision purporting to discharge the debt owed to FTB. FTB is not required to object to a provision that simply does not exist. Moreover, FTB received no notice of any intention by debtor to discharge FTB's debt, either through the Plan, the Order Confirming Plan, the Order of Discharge, or from any other source. This absolute lack of notice cannot be construed as "adequate," and ambiguities about treatment of FTB's unsecured claim, if any ambiguities exist, must be construed against the debtor. *In re Brawders*, *supra*.

## V. UNDER *IN RE BISCH*, FTB DID NOT HAVE A DUTY TO OBJECT TO CONFIRMATION OF THE PLAN.

The Ninth Circuit BAP addressed an analogous scenario in *Bisch v. United States of America* (*In re Bisch*), 159 B.R. 546 (9th Cir. B.A.P. 1993). In *Bisch*, the debtors' Chapter 13 plan treated the entire amount of the claim filed by the Internal Revenue Service ("IRS") as unsecured. *Id.* at 548. IRS did not object to confirmation, and the plan was confirmed. *Id*. Thereafter, the debtors discovered the existence of a valid lien on their home that secured the amounts listed in IRS's unsecured claim. *Id.* The debtors moved to avoid IRS lien, as an improper amendment to its proof of claim. *Id.* The bankruptcy court held that IRS was entitled to assert its lien rights, despite the claim having been filed as an unsecured claim, and ordered the Chapter 13 trustee to pay the sale proceeds to IRS toward satisfaction of its lien. *Id*.

The Ninth Circuit BAP affirmed, considering a basic concept of bankruptcy law: a lien passes through bankruptcy unaffected. *Id.* (citing *Dewsnup v. Timm*, 502 U.S. 410, 418 (1992) and *Johnson v. Home State Bank*, 501 U.S. 78, 82 (1977)). Any statutory lien that is valid under state law remains valid through the bankruptcy, unless invalidated by some provision of the Code. *Bisch*, 159 B.R. at 550 (citing *In re Junes*, 99 B.R. 978, 980 (9th Cir. B.A.P. 1989)). If bankruptcy does not affect the status of a lien, then the creditor is not required to object to the bankruptcy process.

Following the Ninth Circuit BAP's analysis, FTB was not required to object to confirmation of debtor's Plan here. Like the lien that passes through bankruptcy unaffected, a debt described in § 523(a)(1)(B) passes through bankruptcy unaffected by a discharge under § 1328(a). In other words, just as the Bisches' confirmed plan had no effect on a lien that is valid under state law, the Plan here has no effect on the tax debt that is nondischargeable because the returns were filed late and after two years before the petition date.

Here, FTB's debt went through bankruptcy unaffected. In fact, it is even clearer in the instant matter that bankruptcy had no impact on the subject liabilities. Whereas the *Bisch* court noted that there was nothing in the Code that affected the debt owed to IRS, here, § 523(a)(1)(B)(ii) explicitly *excepts this debt from discharge*. Thus, just as in *Bisch*, because bankruptcy (including the Chapter 13 Plan) had no effect on the subject liabilities, FTB was not required to object to confirmation of the Plan.

## CONCLUSION

For the foregoing reasons, there is no triable issue of material fact related to the dischargeability of the subject liabilities. FTB is entitled to a judgment as a matter of law that the tax and interest on tax owed by debtor to FTB related to the 2003 through 2007 tax years were not discharged by the discharge issued in this case. Accordingly, FTB respectfully requests that the Court grant the motion and enter judgment declaring that the subject liabilities, and all post-petition interest thereon, were excepted from the discharge entered in this case.

Dated: May 21, 2018

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
ANNE MICHELLE BURR
Supervising Deputy Attorney General

*/s/ Cara M. Porter*
CARA M. PORTER
Deputy Attorney General
*Attorneys for Defendant*
*California Franchise Tax Board*

SF2017901668